UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Christopher Gary Baylor,
      Plaintiff,

                                        Case No.: 6:21-cv-00617-PGB-GJK

vs.

KENNEDY COURT, LLC, THE
DEPARTMENT OF HEALTH AND
HUMAN SERVICES, CENTERS FOR
DISEASE CONTROL AND PREVENTION,
      Defendants.
_____/

---

## BAYLOR'S RESPONSE TO COURT'S SHOW CAUSE ORDER

---

1        COMES NOW Plaintiff, Christopher Gary Baylor ("Baylor"), and hereby files a response

2  to this Court's Show Cause Order (O.S.C) [ECF. No.16] received by mail[1] on May 31, 2021,

3  why "Plaintiff's requests may be subject to the Rooker-Feldman doctrine, the Younger

4  abstention doctrine, and may violate the Anti-Injunction Act, 28 U.S.C. § 2283" including the

5  Mootness Doctrine, and respectfully state as follows:

6  **ROOKER-FELDMAN DOCTRINE**

7        1.    On March 27, 2021, this Court *sua sponte* entered in this case an Order to Show

8  Cause following Baylor's request for emergency injunctive relief due to exigent circumstances.

9  In the Court's O.S.C., it first raises the Rooker-Feldman doctrine, but whether the doctrine is

10  applicable in this case is a question of law and fact.

---

[1] When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail). . .3 days are added after the period would otherwise expire under Rule 6(a).

11      2.     Here, Rooker-Feldman does not apply for several reasons, and the law clerks, in

12  their argument, are incorrect. Most notably, it was said in the O.S.C. that "*the Motion was not*

13  *filed until after the eviction order was apparently entered*". How then could Baylor's Motion for

14  Injunctive relief filed in this case on May 14, 2021 [ECF. No.10] possibly precede the county

15  court's judgment entered in the State case on May 17, 2021 [Doc.No.14]?

16      3.     Rather than give a lengthily dissertation of the doctrine's history, in short, the

17  doctrine itself, including the majority of courts, hold to one principle under which the doctrine

18  applies or may be invoked, and the determining factors that consistently remain the same are:

19      (1) the federal plaintiff lost in state court;

20      (2) the plaintiff 'complain[s] of injuries caused by [the] state court judgments';

21      (3) those judgments were rendered before the federal suit was filed; and

22      (4) the plaintiff is inviting the district court to review and reject the state judgments.

23      4.     Under this context and at the time Baylor timely filed his Motion for Emergency

24  Injunctive Relief on May 14, 2021 [ECF. No.10]: Firstly, no judgment had been entered into the

25  county court at this time. Second, Baylor could not have possibly complained of an injury from a

26  State court judgment since no judgment had been entered and no injury yet occurred (Baylor

27  complains of KENNEDY's acts that constitute irreparable harm, and State court is not a party to

28  this action). Third, first and second contentions follow since no judgment was entered prior to

29  the filing of a Motion for Emergency Injunctive Relief, nor before commencement of this action.

30  Lastly, Baylor clearly has not invited this Court to review or reject the State court judgment since

31  no judgment was entered prior to seeking relief, neither was it inferred anywhere in his Motion.

32      5.     While Baylor may have risen the fact county court "was authorized to enforce an

33  eviction order against him", is not a basis for this Court to invoke the Rooker-Feldman doctrine.

34      6.      Rooker-Feldman has been given plenary interpretations by each federal Circuit,

35  where even the Eleventh Circuit applies a different standard and has most recently said:

36              The doctrine "operates as a bar to federal court jurisdiction
37              where the issue before the federal court [is] inextricably
38              intertwined with the state court judgment so that (1) the success of
39              the federal claim would effectively nullify the state court
40              judgment, or that (2) the federal claim would succeed only to the
41              extent that the state court wrongly decided the issues." Alvarez v.
42              Attorney Gen. for Fla., 679 F.3d 1257, 1262-63 (11th Cir. 2012).

43      7.      Nonetheless, under either set of prongs, the Rooker-Feldman doctrine does not

44  apply in this case. Final judgment of the claims in this case would not nullify the State court

45  judgment nor succeed based on any further decisions made below. The problem here is that

46  federal courts are loaft to apply Rooker-Feldman at first opportunity in order to bar *pro se*

47  litigants of Due Process and Equal Protection, knowingly depriving them of their day in court to

48  quickly dispose of wholly valid claims and actions.

49      8.      In *Exxon Mobil*, the United States Supreme Court warned that the lower courts

50  have extended Rooker-Feldman "far beyond the contours of the Rooker and Feldman cases,

51  overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised

52  by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U. S.

53  C. § 1738.", 544 U.S. 280 (2005). That Court also said, "when there is parallel state and federal

54  litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court" *Id.* at

55  281. Therefore whether judgment was entered prior to or subsequent the Motion, is of no import.

56      9.      Furthermore, stating or recognizing facts of a State proceeding is not the same as

57  inviting a court to review or reject a State court judgment, nor was this Court invited to do such a

58  thing. Rule 201(b)(2) permits a Federal court to "notice the records of any court, state or

59  federal." Kenneth W. Graham, Jur. 21B Fed. Prac. & Proc. Evid. § 5106.4 (2d ed.); See also

3

60    Autonation, Inc. v. O'Brien, 347 F.Supp. 2d 1299, 1304 (S.D. Fla. 2004)("A court may take

61    judicial notice. . . but to establish the fact of such litigation.")(Prel. Inj. granted, motion to strike

62    denied).

63    10.    Based purely on law and the facts in this case, Baylor respectfully requests that

64    this Court refrain from dismissing his Motion for Injunctive relief under Rooker-Feldman.

65    **YOUNGER-ABSTENTION DOCTRINE**

66    11.    When considering whether to give effect to Younger-Abstention in this action

67    which is civil in nature, the doctrine runs contrary to the federal mandate against residential

68    evictions. According to 42. U.S.C. 264(e), under which the federal mandate was promulgated,

69    provides complete preemptive force over State law and claims concerning possessory actions,

70    which do not implicate State interests. See for example Logan v. U.S. Bank Nat'l Ass'n, 722 F.3d

71    1163, 1169 (9th Cir. 2013)(finding that the "regulation of eviction proceedings does not

72    implicate an important state interest under Younger"; Ayers v. Phila. Hous. Auth., 908 F.2d

73    1184, 1195 n.21 (3d Cir. 1990)(holding that an eviction action brought by the city housing

74    authority did not implicate an important state interest).

75    12.    In a civil context, the abstention doctrine derived from Younger most often

76    applies in cases involving pending state criminal prosecutions. Although the Supreme Court

77    expanded Younger abstention to apply to pending State civil proceedings, the doctrine is merely

78    subject to cases that are "akin to a criminal prosecution" see, e.g., Huffman v. Pursue, Ltd., 420

79    U.S. 592, 95 S. Ct. 1200, 43 L.Ed.2d 482 (1975).

80    13.    Moreover, the doctrine should be strictly construed to apply in civil proceedings

81    that implicate State "interests in administering certain aspects of their judicial systems." Pennzoil

82    Co. v. Texaco, Inc., 481 U.S. 1, 12-13, 107 S. Ct. 1519, 95 L.Ed.2d 1 (1987). In either case,

83    neither federal nor State court should have an interest in depriving individuals of their housing or

84    constitutional rights. Especially when there lies an unprecedented issue, the first in U.S. history,

85    where the Department of Health and Human Services and Centers for Disease Control and

86    Prevention, under the authority of Congress, created federal law to "Temporary Halt Residential

87    Evictions to Prevent the Further Spread of COVID-19", 86 Fed. Reg. 16,736 (Mar. 31, 2021).

88          14.    Under this special law providing nationwide coverage to all States, designed to

89    extend to tenants, lessees and residents, the preemptive authority of the federal mandate controls,

90    therefore any action taken by this Court to provide adequate relief should not constitute "undue

91    interference with state proceedings." NOPSI, 491 U.S. at 359, 109 S. Ct. 2506, especially when

92    State courts are preempted from acting contrary to federal law.

93          15.    Given such unique circumstances, this Court should not abstain from exercising

94    jurisdiction in this case when the law especially provides for it. The Younger doctrine, like the

95    Rooker-Feldman doctrine, is "an extraordinary and narrow exception to the duty of a district

96    court to adjudicate a controversy properly before it." Colo. River Water Conservation Dist. v.

97    United States, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L.Ed.2d 483 (1976). Accordingly, a district

98    court should not lightly shirk its "virtually unflagging obligation to exercise the jurisdiction

99    given [to it]." Id. at 818, 96 S. Ct. 1236.

100         16.    Nothing in Younger or in any of its progeny requires this district court to abstain

101    under these unique, extraordinary and special circumstances. Based on law, Baylor respectfully

102    requests that this Court refrain from dismissing his Motion for Injunctive relief under Younger-

103    Abstention.

104    **ANTI-INJUNCTION ACT, 28 U.S.C. § 2283**

105         17.    In Baylor's request for Emergency Injunctive Relief, the gravamen of his Motion

106   is not merely premised on the newly emplaced federal law against possessory actions, but also

107   the FHA, under which Baylor seeks to enjoin KENNEDY from committing further injurious acts

108   based on discrimination, the underlying basis for it commencing a possessory action.

109       18.     It should be noted that incorporating the Anti-Injunction Act merely served as a

110   precursor to the already anticipated behavior of the federal court, an abusive pattern known by

111   Baylor to intentionally bar self litigants of any and all relief, a common practice already evinced

112   by this Court's excessive and uncontrolled use of Rooker-Feldman and Younger Abstention.

113       19.     Now in this case Court challenges the Act raised for the sole apparent reason that

114   if Baylor had not raised it in his Motion, this Court would have undoubtedly dismissed his

115   Motion due to its absence. However also, because of its relevancy, was nonetheless raised.

116       20.     *Younger* supports the use of the Anti-Injunction Act under these circumstances

117   since the Supreme Court said in *Younger*, "an ongoing state proceeding may be enjoined under

118   special circumstances." *Id*. at 41, 91 S. Ct. at 749. Without question, the nationwide federal

119   mandate against eviction and the rarity of suits against property flipping constitute *special*

120   *circumstances* that are also extraordinary or unique.

121       21.     Even in light of special circumstances, this Court misapplies Younger, and the

122   Anti-Injunction Act which serves as a check and balance on the broad authority recognized by

123   the All Writs Act, but merely inhibits federal courts from abusing authority to stay proceedings

124   in state court unless provided for by law. Notwithstanding, one of three narrow exceptions to the

125   Anti-Injunction Act is clearly met.

126       22.     Baylor's Motion for Injunctive Relief squarely presents the basis to conclude that

127   at least one exception to the Anti-Injunction Act applies under these special circumstances. As a

128   result, Baylor's request for injunctive relief must lie. In others words, of significance here,

129  injunctive relief is expressly authorized by Congress under § 2283, since "a court of the United

130  States may grant an injunction to stay proceedings in a State court as <u>expressly authorized</u> by Act

131  of Congress." *See* <u>In re Fundamental Long Term Care, Inc.</u>, 873 F. 3d 1325, 1338 (11th Cir.

132  2017).

133       23.    The Federal Housing Act, clearly outlined in Baylor's Motion, is an "<u>expressly</u>

134  <u>authorized</u>" exception to the federal anti-injunction statute. In <u>Mitchum v. Foster</u>, 407 U.S. 225

135  (1972), the U.S. Supreme Court prescribed a two-part analysis for determining whether a federal

136  statute comes within the Anti-Injunction Act's "expressly authorized" exception: (1) the statute

137  "must have created a specific and uniquely federal right or remedy, enforceable in a federal court

138  of equity," and (2) the federal right or remedy must be such that it can be "given its intended

139  scope only by the stay of a state court proceeding." *Id.* at 237-38. This Court need only consider

140  the first prong of the Mitchum test because the FHA is expressly enforceable in both State and

141  federal courts. See 42 U.S.C. § 3613(a)(1)(A)(highlighting that a plaintiff "may commence a

142  civil action in an appropriate United States district court or State court not later than 2 years after

143  the occurrence or the termination of an alleged discriminatory housing practice . . . .").

144       24.    Therefore as a matter of law, Baylor respectfully requests that this Court refrain

145  from dismissing his Motion for Injunctive "STAY" relief under the Anti-Injunction Act.

146  **<u>MOOTNESS DOCTRINE</u>**

147       25.    While judgment may be entered in the State county court, such entry does not

148  justify dismissal of Baylor's Motion for injunctive stay relief under the justiciability doctrine of

149  Article III nor equitable and prudential Mootness.

150       26.    According to 28 U.S.C. § 2283, the Anti-Injunction Act permits "a court of the

151  United States. . . to stay proceedings in a State court", akin to Rule 8 and 18 of the Fed. R. App.

152    P. which provides for a "Stay or Injunction Pending Appeal" — an order. . granting an injunction

153    while an appeal is pending. 8(a)(1)(c).

154        27.    Under two laws Baylor's Motion is not moot, because:

155        The first law is based on the latter argument. Following entry of the State court's

156    judgment, Baylor filed Notice of Appeal which commenced appellate case 5D2021-1345

157    in the Fifth District Court of Appeals for Brevard county May 28, 2021, see **Exhibit "A"**.

158    Generally, stays are granted pending the outcome of an appeal. Accordingly, 28 U.S.C. §

159    2283 permits a stay of a State court proceeding, See, for example, Fed. R. App. P. 18

160    (applying procedure to "stay pending review" of State agency decision).

161        The second law is based on the Supreme Court's recognition of several exceptions

162    to the mootness doctrine, that if found, apply to a case. In *Sibron v. New York*, the Court

163    explained that the case was not moot when the result of a [judgment] may persist and

164    subsequent [judgments] may carry heavier penalties affecting civil rights. Court also said,

165    as the power to remedy an invalid [judgment] exists, its thinks, the [defendant] is entitled

166    to an opportunity to attempt to show that the [judgment] was invalid. 392 U.S. 40, 55

167    (1968). However, it does not follow that "th[is] federal claim would succeed only to the

168    extent that the state court wrongly decided the issues." Alvarez, 679 F.3d 1257, 1262-63

169    (11th Cir. 2012).

170        This exception to the mootness doctrine applies when there is a "possibility that

171    any collateral legal consequences will be imposed on the basis of the challenged

172    [judgment]." Sibron 392 U.S. at 57. Even a "remote" possibility of such consequences is

173    enough to save a [motion] from becoming moot. Benton v. Maryland, 395 U.S. 784, 790-

174    91 (1969).

175    28.    The way by which State court imposed collateral consequences against Baylor

176    came by way of *subsequent judgment*, and is more than a *remote possibility*, evinced on May 27,

177    2021 when Baylor filed a Motion to Set Aside the county court's void judgment. See **Exhibit**

178    **"B"**. On the same day, county court responded with a judgment denying a "STAY", wholly

179    contrary to the subjects raised for review. See **Exhibit "C"**

180    29.    In deciding on Baylor's Motion to Set Aside judgment, the county court rather

181    decided Baylor could not "stay" at KENNEDY COURT when neither the subject nor question

182    was raised in his Motion. The judgment was so manifestly erroneous, incompetent and biased,

183    disqualified the sitting judge by pro se Motion, See **Exhibit "D"**. In its Order, county court

184    outright denied Baylor of his *civil rights*, more precisely the right to housing.

185    30.    Under the circumstances, Baylor remains subject to collateral legal consequences,

186    especially in the sense county court specifically reserved jurisdiction to continue making further

187    judgments in that case. Because Baylor is subject to the further loss of constitutional and civil

188    rights, the State court proceeding should be stayed. "Although this possibility may be a remote

189    one, it is enough to give this case an adversary cast and make it justiciable." *Id.* at 791.

190    31.    Based on the aforementioned argument, the county court's misconduct further

191    implicates Baylor's Civil, Due Process and Equal Protection rights, and the adverse party may

192    still cause irreparable harm by obtaining other judgments in the possessory action. KENNEDY

193    has not alleged any substantial harm, and the public surely has no interest in invalid judgments or

194    violations of the constitution(s). While no "voluntary cessation" is found and discrimination is

195    "capable of repeating yet evading review", if Judge Baker of the State court, or Judge Baker of

196    the federal court are allowed to issue unfair or biased judgments, the result would be unnecessary

197    appeals, recusal, additional pre- and post-judgment motions, such are a waste of judicial

9

198 resources and taxpayer coin. Moreover, Baylor is more likely to succeed on the merits of his

199 appeal since his principle brief raises (10) ten errors, all found reversed by the Fifth District

200 Court of Appeals.

201      **WHEREFORE**, based on the foregoing facts and laws under the United States Supreme

202 Court and 11th Circuit, Baylor respectfully requests that this Court grant injunctive relief and

203 stay the State court proceedings.

204     (1) Under either standard of Rooker-Feldman, no prongs provided by the Supreme Court
205         or 11th Circuit apply here. Entry of judgment does not trigger the doctrine;

206     (2) This civil case presents "special" if not extraordinary or unique circumstances.
207         Applying Younger Abstention contravenes Congressional intent, the protection of
208         housing rights, a federal law against eviction, and no State interests exist;

209     (3) The FHA "expressly authorizes" a stay of State court proceedings under the Anti-
210         Injunction Act, and;

211     (4) Based on the State court's subsequent judgment denying Baylor of civil and housing
212         rights, the mootness doctrine does not apply when an individual is subject to
213         collateral legal consequences, even if "remote".

214    *I certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.*

215 Respectfully signed this
216 11th day of June 2021.

217

218              *Against A Fatherless America*
219              Christopher Gary Baylor
220              Advocate for the Prevention of Child
221              Abduction, Abuse & Alienation
222              491 Baltimore Pike, Ste. 105
223              Springfield, Pennsylvania 19064
224              P: (484) 682-2605
225              cbaylor@aafa-law.org

226                   **<u>CERTIFICATE OF SERVICE</u>**

227     I HEREBY CERTIFY that a copy hereof will be served via first class mail to KENNEDY
228 COURT, LLC, via counsel of record, Luis D. Carreja, at 3490 North U.S. Highway 1 Cocoa,
229 Florida 32926, upon acceptance of filing or on the 14th day of May, 2021.

# EXHIBIT A





District Court of Appeal
Fifth District
300 South Beach Street
Daytona Beach, Florida 32114
(386) 947-1500

## <u>ACKNOWLEDGMENT OF NEW CASE</u>

DATE:          May 28, 2021

STYLE:    CHRISTOPHER GARY          v.  KENNEDY COURT, LLC.
          BAYLOR
5DCA#:    21-1345

The Fifth District Court of Appeal has received an Appeal reflecting a filing date of May 27, 2021.

The county of origin is Brevard.

The lower tribunal case number provided is 05-2021-CC-010813.

The filing fee is .*

Case Type:  County Civil     Landlord/Tenant/Eviction – Residential     Final


*Filing fees may be paid via the Statewide Portal (myflcourtaccess.com). On the "Pleading on Existing Case" screen, enter your appellate court case number and click "Search." When the case populates, click "Next."  On the next screen, choose "Add." On the next screen (the "Add/Edit Document" screen), search for "pay fee," then choose the appropriate fee box. Upload a copy of the Order to Pay issued by this Court, click "save" and then "next." You do not need to serve the other party with this filing; click "next." On the next screen, choose the appropriate payment option and enter the required credit card or banking information. If the payment information is correct, you may choose "Confirm and Submit All Now."

The Fifth District Court of Appeal's case number must be utilized on all pleadings and correspondence filed in this cause.     Moreover, ALL

PLEADINGS SIGNED BY AN ATTORNEY MUST INCLUDE THE ATTORNEY'S FLORIDA BAR NUMBER.

Pursuant to Administrative Order 5D18-02 (Amended), attorneys are required to: (1) provide their client(s) with a copy of every motion for extension of time or notice of agreed extension of time the attorney files and (2) include a statement in the certificate of service on that motion or notice certifying that a copy of the motion or notice was provided to the client and the manner in which the copy was provided (i.e. by U.S. Mail, e-mail, or hand delivery). The State of Florida and governmental agencies are excluded from the requirements of this Administrative Order.

Any party who may properly proceed in this Court pro se, i.e., unrepresented by counsel, may find useful "The Pro Se [Self-Represented] Appellate Handbook," which is provided by the Appellate Practice Section of The Florida Bar (available at www.flabarappellate.org.).

Please review and comply with any handouts enclosed with this acknowledgment.

cc:     Luis Carreja          Christopher Gary          Clerk Brevard
                              Baylor

# EXHIBIT B

IN THE COUNTY COURT OF THE EIGHTEENTH JUDICAL DISTRICT
IN AND FOR BREVARD COUNTY, FLORIDA

KENNEDY COURT, LLC,

        Plaintiff,

vs.                      Case No.: 05-2021-CC-010813-XXXX-XX

Christopher Baylor,

        Defendant.

_____/



EXHIBIT
B

## VERIFIED EMERGENCY MOTION TO SET ASIDE DEFAULT JUDGMENT, ALTERNATIVELY MOTION FOR REHEARING

    COMES NOW Defendant, Christopher Baylor (hereinafter "Baylor"), by and through the undersigned, who hereby with due diligence, timely files this Motion to Vacate Judgment pursuant to Fla. R. Civ. P. 1.540(b)(3) & (4), alternatively for Rehearing pursuant to Fla. R. Civ. P. 1.530(a), and would show as follows:

### ARGUMENT

#### Summary of Argument

    In this case, Judge Michelle V. Baker and Lisa Walters (collectively "county court") made no particularized findings, but instead, entered judgment by default in favor of a represented party without giving any deference to a self represented party's defenses. This utterly one-sided decision violates Baylor's constitutional right to Due Process and Equal Protection because county court woefully overlooked every defensive response and pleading containing law, fact, evidence and argument in his favor. In the face of superseding laws,

1

EXHIBIT C

**IN THE COUNTY COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR BREVARD COUNTY, FLORIDA**

**CASE NO: 05-2021-CC-010813**

**KENNEDY COURT LLC,**
  **Plaintiff,**

**-vs-**

**CHRISTOPHER  BAYLOR,**
  **Defendant.**

_____

EXHIBIT

**C**

**ORDER DENYING EMERGENCY MOTION TO STAY**

The case came before the Court on Thursday, May 27, 2021, on the Defendant's *Emergency Motion to Stay*, filed on Thursday, May 27, 2021.  The Court having heard the argument of the parties, having reviewed the pleadings, the Final Judgment of Eviction, the said motion and the records of the Clerk's registry, and having been otherwise advised in the premises,

It is hereby **ORDERED** and **ADJUDGED** as follows:

The Defendant's Motion to Stay at the following address is **DENIED**:

1111 Kennedy Court, Apt 46, Titusville FL 32780

DONE AND ORDERED on Thursday, May 27, 2021, in Brevard County, Florida.

05-2021-CC-010813 05/27/2021 03:25:22 PM

Michelle Baker, County Judge
05-2021-CC-010813 05/27/2021 03:25:22 PM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Order Denying Motion to

Stay was furnished to

CARREJA, LUIS D
luis@brevardlawgroup.com

CHRISTOPHER BAYLOR
1111 KENNEDY CT APT 46
TITUSVILLE, FL 32780

Christopher Baylor
edo_delight@comcast.net

John Soileau
jsoileau@brevardlawgroup.com

Victor Watson
victor@brevardlawgroup.com

Stacey Burgett
sburgett@brevardlawgroup.com

Joseph E. Deleo
jdeleo@brevardlawgroup.com

this Thursday, May 27, 2021.

05-2021-CC-010813 05/27/2021 04:08:05 PM

Lisa Walters, Judicial Assistant
05-2021-CC-010813 05/27/2021 04:08:05 PM

# EXHIBIT D

**IN THE COUNTY COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR BREVARD COUNTY, FLORIDA**

**CASE NO: 05-2021-CC-010813**

**KENNEDY COURT LLC,**
   **Plaintiff,**

**-vs-**

**CHRISTOPHER  BAYLOR,**
   **Defendant.**

EXHIBIT
**D**

---

### ORDER GRANTING MOTION TO DISQUALIFY JUDGE

**THIS CAUSE**, came before this Court on Defendant's Motion to Disqualify Judge, and it appearing it would be in the best interest of all parties concerned, it is hereby;

**ORDERED** that the undersigned Judge recuses herself, and transfers this cause to the Administrative County Court Judge for reassignment.

**DONE AND ORDERED** on Monday, June 7, 2021, in Brevard County, Florida.

05-2021-CC-010813 06/07/2021 10:25:46 AM

Michelle Baker, County Judge
05-2021-CC-010813 06/07/2021 10:25:46 AM

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Order of Recusal was furnished to

CARREJA, LUIS D
luis@brevardlawgroup.com

CHRISTOPHER BAYLOR
1111 KENNEDY CT APT 46
TITUSVILLE, FL 32780

Christopher Baylor
edo_delight@comcast.net

John Soileau
jsoileau@brevardlawgroup.com

Victor Watson
victor@brevardlawgroup.com

Stacey Burgett
sburgett@brevardlawgroup.com

Joseph E. Deleo
jdeleo@brevardlawgroup.com

this Monday, June 7, 2021.

05-2021-CC-010813 06/07/2021 11:29:06 AM

Lisa Walters, Judicial Assistant
05-2021-CC-010813 06/07/2021 11:29:06 AM